*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

No. 06-4405

MING LIOU,

> *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00150—James L. Graham, District Judge.

Submitted: July 18, 2007

Decided and Filed: July 20, 2007

Before: MOORE and GILMAN, Circuit Judges; FORESTER, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Richard A. Cline, RICHARD CLINE & CO., LLC, Columbus, Ohio, David C. Young, SUNBURY & YOUNG, Columbus, Ohio, for Appellant. Douglas W. Squires, UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Ming Liou appeals the twelve-month sentence imposed after he pleaded guilty to a single count of bribing a public official, in violation of 18 U.S.C. § 201(b)(1)(A). In light of the United States Supreme Court's recent decision in *Rita v. United States*, --- U.S. ----, 127 S. Ct. 2456 (2007), we **AFFIRM** the district court's sentence.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Liou was the owner and operator of Beta Electronics, Inc. ("Beta"). Beta sold electronics, (primarily, laser pointers and USB fast drives), and Liou operated the company from his home. The IRS assigned Agent Beth Cox to audit Beta's 2003 income tax return, as well as the 2003 personal income tax return of Liou and his wife.

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation

On July 11, 2005, during a meeting with Cox, Liou offered her a designer handbag as a gift, claiming it was worth $400. Cox declined. In the same meeting, Liou divulged that he would have to pay his accountant $5000 to handle the audit, but said that he would rather pay the $5000 to Cox if she would expedite the audit and "not be too hard on him." Joint Appendix ("J.A.") at 77 (Plea Hr'g Tr. at 20). Cox did not accept or reject the offer. After the meeting, however, she did relay this conversation to her superiors.

The following day, Cox made an electronically monitored telephone call to Liou to schedule their next meeting. Liou referred to the $5000 offer and asked Cox to let him know whether she was willing to accept it. On July 25, 2005, Cox made another electronically monitored phone call to confirm with Liou that they would meet the next day. During this conversation, Liou stated, "You know the one thing you say you would get back to me, I have it prepared." J.A. at 77 (Plea Hr'g Tr. at 20). Cox understood that Liou was referring to the $5000.

On July 26, 2005, Cox wore a wire to her meeting with Liou at his home, which was also his place of business. Liou gave Cox the $5000 in cash and the designer purse. He asked that she terminate the audit quickly and favorably to him, that she not let anyone else know that she had given him a break, and that she not deposit the cash in the bank.

On June 26, 2006, the government filed an Information charging Liou with one count of bribing a public official in violation of 18 U.S.C. § 201(b)(1)(A). On July 13, 2006, Liou pleaded guilty.

A U.S. Probation Officer prepared a Presentence Investigation Report ("PSR") for Liou. The PSR revealed that Liou was fifty years old, had no prior criminal history, and was the sole source of support for his wife and twenty-one-year-old son. The PSR calculated Liou's total offense level to be 12, and his criminal history to be category I; the Guidelines called for a sentence of ten to sixteen months. On October 5, 2006, Liou filed a Sentencing Memorandum. Liou objected to the PSR, arguing that his offense was the result of aberrant behavior, and accordingly he should receive a downward departure under Guideline § 5K2.20. Separately from this objection, Liou argued that home confinement would be a "reasonable sentence" to accomplish the sentencing goals listed at 18 U.S.C. § 3553(a). In support of this argument, Liou noted, among other things, that (1) if he were to go to prison, his business would fail, and (2) his wife was completely dependent upon him, could not speak English, and would have to return to Taiwan. These problems were exacerbated by his son Alan's young age and history of mental disorders, which prevented Alan from caring for his mother or the business in Liou's absence.

The district court held a sentencing hearing on October 12, 2006, and rejected Liou's request for a downward departure based on aberrant behavior. Additionally, after listing the § 3553(a) sentencing factors, the district court concluded that the most important factors were "the need for the sentence to reflect the seriousness of the offense and to promote respect for the law." J.A. at 90 (Sentencing Hr'g Tr. at 8). The district court concluded that the sentence must "be sufficient to deter other individuals who may be similarly situated," J.A. at 91 (Sentencing Hr'g Tr. at 9), and more specifically that such a sentence must "include[] a significant term of incarceration," J.A. at 92 (Sentencing Hr'g Tr. at 10). Consequently, the district court sentenced Liou to twelve months and one day of incarceration.[1] Noting Liou's family and business obligations, the district court permitted him to self-report within sixty days of the sentencing hearing.

Liou timely filed a notice of appeal on October 19, 2006.

---

[1] The district court noted that the additional day was favorable to Liou because it "g[ave] the defendant the opportunity to have some reduction in his sentence by virtue of good behavior in the institution." J.A. at 92 (Sentencing Hr'g Tr. at 10).

## II.  ANALYSIS

On appeal, Liou argues that the district court erred by (1) failing to discuss explicitly his familial circumstances, and (2) imposing a sentence that included jail time.  (Liou concedes that the district court aptly addressed his request for a downward departure under Guideline § 5K2.20, and does not appeal the district court's rejection of this request.)  Liou requests that the district court's sentence be vacated and that he be resentenced.

### A.  Standard of Review

After Liou appealed, the Supreme Court issued its decision in *Rita*.  To determine the appropriate standard of review in this case, we must first consider the effect of *Rita*.

#### 1.  Our Post-*Booker* Jurisprudence

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court "transformed the Sentencing Guidelines from a mandatory scheme to an advisory resource."  *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006).  The Court further held that in reviewing a district court's sentence, we are to apply "a practical standard of review . . . familiar to appellate courts: review for 'unreasonable[ness].'"  *Booker*, 543 U.S. at 261 (alteration in original).  In our post-*Booker* jurisprudence we determined that "[r]easonableness has both substantive and procedural components."  *United States v. Jones*, --- F.3d ----, No. 06-5551, 2007 WL 1595540, *5 (6th Cir. June 5, 2007).

As to procedural reasonableness, we have held that "[a] sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration."  *Id.* (internal citations and quotation marks omitted).  Additionally, we have suggested that when "a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."  *Id.* (quoting *Richardson*, 437 F.3d at 554).

In considering substantive reasonableness, we have held that "[a] sentence may [be] substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'"  *Id.* at *6 (quoting *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)) (second through fifth alterations in original).  Although we have noted that the border between factors properly considered "substantive" and those properly considered "procedural" is blurry if not porous, *see id.* at *6 n.3, our post-*Booker* jurisprudence requires us to consider each of these factors in determining whether a sentence is reasonable.

Further, with regard to the substantive reasonableness inquiry, we have applied a "rebuttable presumption of reasonableness" to sentences falling within the applicable Guidelines range.  *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), *cert. denied*, --- U.S. ---, 74 U.S.L.W. 3707 (June 29, 2007).[2]  However, we have also rejected the notions that a within-Guidelines sentence is

---

[2] We have made clear that this presumption does not affect our consideration of procedural reasonableness. *See, e.g.*, *United States v. Cage*, 458 F.3d 537, 541 (6th Cir. 2006) (noting that the presumption can be "rebutted in a case in which the record fails to reflect that the district court considered the requisite factors in imposing sentence"); *Richardson*, 437 F.3d at 554 ("This rebuttable presumption does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence."); *United States v. Foreman*,

"per-se reasonable," *Richardson*, 437 F.3d at 554 n.2 (quoting *Webb*, 403 F.3d at 385 n.9), and that a sentence falling outside the Guidelines range is presumptively *un*reasonable, *Ferguson*, 456 F.3d at 664-65. Some of our precedents might be read to indicate that the presumption of reasonableness implies an enhanced burden on the party challenging the district court's sentence. *See, e.g.*, *United States v. Shoup*, 188 F. App'x 418, 425 (6th Cir. 2006) (unpublished) ("Ultimately, Shoup has failed to overcome the rebuttable presumption of reasonableness that we must apply to this case."); *United States v. Crenshaw*, 182 F. App'x 440, 442 (6th Cir. 2006) (unpublished) ("Crenshaw has not pointed to anything which overcomes th[e] presumption [of reasonableness] here."). We have not, however, clearly identified the contours of this presumption or its ultimate effect.

Other circuits disagreed with our holding in *Williams* and held that a sentence falling within the applicable Guidelines range is *not* entitled to a presumption of reasonableness. *See Rita,* 127 S. Ct. at 2462 (citing *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc), *cert. denied*, 127 S. Ct. 928 (2007); *United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir.), *cert. denied*, 127 S. Ct. 192 (2006); *United States v. Cooper*, 437 F.3d 324, 331-32 (3d Cir. 2006); *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)). The Supreme Court granted certiorari in *Rita* "to decide whether a circuit court may afford a 'presumption of reasonableness' to a 'within Guidelines' sentence." *Id.*

### 2. The Supreme Court's Decision in *Rita*

In *Rita*, the Supreme Court held that "the law permits the courts of appeals to use th[e] presumption" of reasonableness when addressing within-Guidelines sentences. *Id.* at 2459. On this point, *Rita* does little to disturb our post-*Booker* jurisprudence. It does, however, clarify various aspects.

First, *Rita* clarifies that "appellate 'reasonableness' review merely asks whether the trial court abused its discretion." *Id.* at 2465. This does not mean, however, that we import the abuse-of-discretion standard from other contexts. To the contrary, *Booker* merely gives the district courts discretion in sentencing, in accordance with the § 3553(a) factors, and reasonableness review is the manner in which the courts of appeals review sentences to determine if the sentencing courts abused that discretion. *See id.*; *Booker*, 543 U.S. at 261-62.

Second, *Rita* reinforces our conclusion that reasonableness review requires us to inquire into both "the length of the sentence" and "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). Emphasizing that "[j]udicial decisions are reasoned decisions," *Rita* exhorts the sentencing judge to satisfy the procedural requirement of "set[ting] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468. The amount of reasoning required varies according to context. *Rita* indicates that when a sentencing judge concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy. *Id.* "Whe[n] the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments." *Id.*

Third, *Rita* demands that any "presumption" of substantive reasonableness is not a "presumption" as generally defined. *Id.* at 2463. *Black's Law Dictionary* notes, "Most presumptions are rules of evidence calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence. A presumption shifts the burden of production or

---

436 F.3d 638, 644 (6th Cir. 2006) (noting that the presumption does not render a sentence reasonable when "there is no evidence that the district court followed its statutory mandate").

persuasion to the opposing party, who can then attempt to overcome the presumption." BLACK'S LAW DICTIONARY 1203 (Brian A. Garner, ed., 7th ed. 1999); *see also id.* at 1205 (defining "rebuttable presumption" as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence").

*Rita*, however, notes that the presumption of reasonableness "is not binding. It does not, like a trial-related evidentiary presumption insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case." *Rita*, 127 S. Ct. at 2463. Accordingly, the presumption does not "reflect strong judicial deference of the kind that leads appeals courts to grant greater factfinding leeway to an expert agency than to a district judge." *Id.* The Court explained that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Id.* And that agreement, says *Rita*, "significantly increases the likelihood that the sentence is a reasonable one." *Id.*[3]

Today, as before *Rita*, regardless of whether the sentence falls within the Guideline range, we review the sentencing transcript to ensure (1) that the sentencing judge adequately considered the relevant § 3553(a) factors and clearly stated his reasons for imposing the chosen sentence,[4] and (2) that the sentence is substantively reasonable.

## B. Procedural Reasonableness

Liou first argues that the district court erred by failing to comment on the disproportionate impact that incarceration would have on him, in light of his responsibilities to his family and his business. He argues that these circumstances constitute a mitigating factor that required careful consideration and comment by the district court.

As noted above, the district court offered clear reasons for its sentence. It articulated the various § 3553(a) factors and then identified the two factors it found most relevant. The district court then explained why imprisonment was necessary to satisfy these factors. Liou is correct that the district court did not specifically explain why it was not more moved by Liou's family circumstances or why they were less of a concern than the need for the sentence to reflect the

---

[3] In our first sentencing decision after *Rita*, we stated that, because the defendant was sentenced within the applicable Guidelines range, it was "incumbent upon [the defendant] to establish that his sentence was unreasonable." *United States v. Crowell*, --- F.3d ----, 2007 WL 1814333, at *6 (6th Cir. June 26, 2007) (citing *Rita*, 127 S. Ct. at 2462-63). Our statement in *Crowell* should not be read to require a party challenging a within-Guidelines sentence to bear a burden higher than that established by *Rita*. *See Rita*, 127 S. Ct. at 2463 (stating that the allowable presumption of reasonableness "does not . . . insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case"); *id.* at 2465 (noting that the presumption of reasonableness does not have "independent legal effect"). When the appellant challenges a within-Guidelines sentence, it must, of course, present persuasive arguments that the district court erred in its sentencing determination, just as any burden-bearing appellant must. We understand *Crowell* to highlight this point.

[4] We note that some of our pre-*Rita* precedents—*Jones* and *Richardson* in particular—might be read to require district judges to recite and analyze explicitly each argument, whether frivolous or non-frivolous, that a defendant even *arguably* raises in support of a lower sentence. We do not read our precedents so robustly. *See United States v. McGee*, --- F.3d ----, 2007 WL 1989017, at *6 (6th Cir. July 11, 2007) (noting that, notwithstanding *Richardson*, the district court need not address an argument lacking factual support). Further, we recognize that *Rita* contravenes such a strong technical requirement.

   *Rita* does, however, instruct district courts to "set forth enough [reasoning] to satisfy the appellate court." *Rita*, 127 S. Ct. at 2468. Accordingly, while a district court's failure to address each argument head-on will not lead to automatic vacatur, we will vacate a sentence if the "context and the record" do not "make clear" the court's reasoning. *Id.* at 2469. And, of course, a thorough explanation is the most reliable way for a district court to make clear its reasons supporting a given sentence.

seriousness of the offense and to promote respect for the law. Nonetheless, the district court *did* acknowledge Liou's family and business circumstances at the sentencing hearing, when on this basis, it gave Liou sixty days to self-report: "Now, the Court is going to permit Mr. Liou to voluntarily surrender to the institution designated by the Bureau of Prisons; and in light of his family circumstances and in light of his business, the Court is going to give him 60 days to put his affairs in order before reporting to serve this sentence." J.A. at 93 (Sentencing Hr'g Tr. at 11).

As in *Rita*, "[t]he record makes clear that the sentencing judge listened to each argument." 127 S. Ct. at 2469. Further, as in *Rita*, "context and the record make clear" that the sentencing judge understood Liou's family and business obligations but did not believe they outweighed other § 3553(a) factors that the judge found more pertinent. *Id.*

In sum, the sentencing judge's performance satisfies *Rita*. That said, the better practice, post-*Rita*, is for a sentencing judge to "go further and explain why he has rejected [each of the defendant's nonfrivolous] arguments" for imposing a sentence lower than the Guidelines range. *Id.* at 2468. Doing so will help to ensure that district courts "set forth enough to satisfy the appellate court." *Id.* Nonetheless, we cannot say that Liou's sentence runs afoul of *Rita*.

## C.  Substantive Reasonableness

Liou also argues that his sentence is objectively unreasonable "precisely because the district court failed to adequately address the mitigating factor advanced by Mr. Liou at sentencing." Appellant's Br. at 17. Although this appears identical to the argument Liou offered in favor of finding the sentence procedurally unreasonable, we interpret Liou's focus to be that the length (twelve months) and type (incarceration rather than community confinement) of sentence are too harsh in light of his mitigating circumstances. Liou suggests that community confinement constitutes a less-restrictive alternative to incarceration, and that it would be adequate to serve the interests of deterrence and "just punishment" that the district court cited. In support of this argument, Liou cites a series of out-of-circuit, pre-*Booker* cases establishing that various courts have imposed more-lenient sentences in similar cases. This argument misapprehends the post-*Booker* role of appellate courts. While in the abstract we might agree that community confinement could serve the relevant interests, it is for the district court to determine, in the first instance, what sentence is "sufficient, but not greater than necessary" to meet these interests. 18 U.S.C. § 3553(a). We review the district court's sentence for reasonableness. Although Liou argues that the district court did not weigh properly his mitigating circumstances, after carefully reviewing all the material presented to the district court, we cannot say that the incarceration imposed was an *unreasonable* sentence, regardless of whether it is the sentence that we might select ourselves. Accordingly, we reject Liou's argument.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.