NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0151n.06

No. 23-1552

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| KURTIS JAMES VANDERMOLEN, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

**FILED**
Apr 03, 2024
KELLY L. STEPHENS, Clerk

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Kurtis VanderMolen applied for and received approximately $170,000 in funds from the Paycheck Protection Program during the COVID-19 pandemic to fund his business venture. That business, however, was a fictitious one, and VanderMolen used the funds for a variety of personal expenses. VanderMolen pleaded guilty and argued at sentencing that a variety of mental-health issues likely contributed to his conduct and therefore counseled in favor of a lower sentence. The district court rejected that argument and sentenced VanderMolen to 30 months' imprisonment. Because that sentence is neither procedurally nor substantively unreasonable, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On December 6, 2022, Kurtis VanderMolen pleaded guilty to an information charging him with bank fraud and money laundering. R. 3 (Plea Agreement at 1–2, 11) (Page ID #6–7, 16). VanderMolen admitted that between 2020 and 2021, he fraudulently obtained money through the

Paycheck Protection Program, a federally administered loan program that was designed to respond to the COVID-19 pandemic. *Id.* at 5–6 (Page ID #10–11). As part of this scheme, VanderMolen created a fake business called Breakout Strategies; submitted false records to a federally insured bank on multiple occasions; and obtained approximately $170,000 in loans. *Id.* VanderMolen used these funds to purchase, among other things, a BMW convertible and to pay for his wedding. *Id.* The district court accepted VanderMolen's guilty plea on December 15, 2022. R. 26 (Final PSR ¶ 5) (Page ID #84).

The parties agreed that VanderMolen's criminal conduct led to a total offense level of 17 under the sentencing guidelines, after factoring in specific offense characteristics and VanderMolen's acceptance of responsibility. *Id.* ¶ 49 (Page ID #91); *see also* R. 44 (Sent'g Tr. at 4:25–5:7) (Page ID #270–71). VanderMolen contended, however, that the district court should apply either a departure from the guidelines under U.S.S.G. § 5K2.13[1] or a downward variance based on his mental-health issues. R. 32 (Def.'s Sent'g Mem. at 1–2) (Page ID #115–16). Prior to sentencing, VanderMolen was examined by Dr. Jarrad Morgan, a forensic psychiatrist. R. 33 (Morgan Rep. at 1) (Page ID #155). Dr. Morgan reported that VanderMolen experienced physical and emotional abuse at the hands of his adoptive parents when he was a child, *id.* at 2 (Page ID #156), and that VanderMolen had been previously diagnosed with bipolar disorder and obsessive-compulsive disorder, *id.* at 6 (Page ID #160). Dr. Morgan ultimately diagnosed VanderMolen with narcissistic personality disorder, characterized by "[a] pervasive pattern of grandiosity . . ., need for admiration, and lack of empathy," *id.* at 13 (Page ID #167), and bipolar II disorder,

---

[1]Under the guidelines, "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13.

meaning that VanderMolen exhibited both hypomanic and major depressive periods, *id.* at 14–15 (Page ID #168–69).

VanderMolen based his mitigation argument on Dr. Morgan's findings. He contended that his criminal conduct "must be considered in light of the mental health problems from which [he] suffers, and which may be seen as at least partially driving his actions in this case." R. 32 (Def.'s Sent'g Mem. at 5) (Page ID #119). VanderMolen also argued that his mental-health issues counseled in favor of a non-custodial sentence so that he could access "needed ongoing mental health treatment." *Id.* at 10 (Page ID #124). VanderMolen largely reiterated these points during the sentencing hearing held on June 5, 2023. His counsel explained that VanderMolen's diagnoses are linked to "impulsivity," which in turn may explain his unlawful conduct. R. 44 (Sent'g Tr. at 6:3–10) (Page ID #272). Beyond further detailing his mental-health treatment and childhood trauma, counsel connected VanderMolen's narcissistic personality disorder to poor decision-making, including the instant criminal offenses and personal bankruptcies. *Id.* at 8:17–9:8 (Page ID #274–75).

After hearing from the government, the district court rejected VanderMolen's arguments, and ultimately imposed a sentence of 30 months' imprisonment, at the high end of the guidelines. *Id.* at 18:19–24 (Page ID #284). The district court acknowledged reviewing the materials that VanderMolen submitted and stated that "the characteristics that are used to diagnose [narcissistic personality disorder] fit him to a tee." *Id.* at 19:2–6 (Page ID #285). Still, the district court was troubled by VanderMolen's apparent attempts to "reframe what happened" with respect to his "blatant fraud" in statements to Dr. Morgan and in his written allocution. *Id.* at 20:3–24 (Page ID #286). And the district court essentially rejected VanderMolen's attempt to make excuses for his

conduct, because even if VanderMolen had used the fraudulently obtained money for business purposes to "resurrect a dream," it would still be fraud. *Id.* at 21:2–8 (Page ID #287). Homing in on Dr. Morgan's report and VanderMolen's diagnoses, the district court did not believe that anything "specifically link[ed]" VanderMolen's mental-health issues to "the pattern of wrongdoing here." *Id.* at 21:18–22:1 (Page ID #287–88). Notwithstanding VanderMolen's diagnoses, the district court explained that it believed that VanderMolen's behavior—including the criminal conduct and numerous bankruptcies which had "left a wake of personal and financial carnage"—"demands some kind of accountability." *Id.* at 22:2–18 (Page ID #288). The district court did, however, appreciate the need for mental-health treatment. *Id.* at 22:19–20 (Page ID #288).

Defense counsel objected to the substantive, but not procedural, reasonableness of the sentence. *Id.* at 24:23–25:3 (Page ID #290–91). The district court entered its judgment on June 5, 2023, reflecting the 30-month prison sentence. R. 39 (J. at 1–2) (Page ID #210–11). On June 15, 2023, VanderMolen timely filed a notice of appeal. R. 41 (Not. of Appeal at 1) (Page ID #221).

## II. DISCUSSION

VanderMolen challenges both the procedural and substantive reasonableness of the district court's 30-month sentence. He contends that the district court failed to explain adequately its reasons for imposing the sentence, and thus rendered an arbitrary sentence. But the district court considered the parties' arguments, explained how it took the § 3553(a) factors into account, and stated why it did not believe that a downward departure or variance was warranted. This process allowed for meaningful appellate review and did not result in an unreasonable sentence.

## A. Standard of Review

Ordinarily, we review both the procedural and substantive reasonableness of a district court's sentence for an abuse of discretion. *United States v. Gates*, 48 F.4th 463, 469, 476 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (2023). A defendant need not object to the substantive reasonableness of a sentence to preserve the issue for appeal. *See, e.g.*, *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009). If a defendant fails to object to the procedural reasonableness of a sentence when given the opportunity, however, we review that aspect of the sentence for plain error. *See, e.g.*, *United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). The parties agree that VanderMolen failed to object to the procedural reasonableness of his sentence when asked the *Bostic* question by the district court, and thus that we review that issue for plain error. Appellant Br. at 7; Appellee Br. at 8. Accordingly, to prevail on his procedural-reasonableness claim, VanderMolen "must show (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

## B. Procedural Reasonableness

At a high level, "in reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *United States v. Bolds*, 511 F.3d 568,

581 (6th Cir. 2007). A district court may also commit procedural error by relying on "clearly erroneous facts" in rendering its sentence. *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017) (quoting *Bolds*, 511 F.3d at 579).

Imposition of a sentence with reference to the § 3553(a) factors, consideration of a party's non-frivolous sentencing arguments, and the district court's adequate explanation of its sentence often go hand-in-hand. *See Wallace*, 597 F.3d at 803–04. Though a district court need not "engage in a ritualistic incantation of the § 3553(a) factors" when rendering a sentence, *Thomas-Mathews*, 81 F.4th at 545 (quoting *Wallace*, 597 F.3d at 802), it must still do more than rely on "a simple and conclusory judicial assertion that the court has considered" the required sentencing factors, *id.* at 546 (quoting *United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013)). And as it relates to consideration of a party's specific and non-frivolous sentencing arguments, the "record must 'make clear that the sentencing judge considered the evidence and arguments,'" *Wallace*, 597 F.3d at 805 (quoting *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc)) (alteration adopted), and provide the judge's "basis for rejecting" any arguments, *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). At bottom, "[i]f this court is left to divine or extrapolate the district court's reasoning after the fact, the district court has not done its job of imposing a procedurally reasonable sentence." *United States v. Byrd*, 843 F. App'x 751, 756 (6th Cir. 2021) (collecting cases); *see also Wallace*, 597 F.3d at 803. A district court that fails to sentence a defendant in accordance with 18 U.S.C. § 3553(c)—which requires a court to "state . . . the reasons for its imposition of the particular sentence"—commits plain error that affects a defendant's substantial rights. *See, e.g.*, *United States v. Cabrera*, 811 F.3d 801, 813–14 (6th Cir.

2016) ("The substantial right to be sentenced pursuant to § 3553(c) flows naturally from the right to meaningful appellate review and the text of § 3553.") (collecting cases).

The district court did not err in imposing a 30-month sentence here, much less plainly so. As an initial matter, the district court heard extensive argument pertaining to VanderMolen's mental-health issues and whether a departure or variance was warranted to account for the role such issues may have contributed to his conduct. The district court also acknowledged that it had read VanderMolen's sentencing submission and the Morgan report, both of which served as the bases for VanderMolen's arguments during the sentencing hearing. R. 44 (Sent'g Tr. at 21:18–21) (Page ID #287). The same is true for the government's proffered submission. *Id.* at 20:16–24 (Page ID #286).

After reviewing these materials and hearing oral argument, the district court also adequately showed its work and explained why it believed that a 30-month, within-guidelines sentence was appropriate. In so doing, it discussed the § 3553(a) factors; explained what factors it found particularly important and why; and connected those factors to specific offense characteristics and VanderMolen's history. For example, the district court highlighted the circumstances of the offense and its seriousness by pointing out the extent of the fraud, including the falsification of business records; the blatant misuse of funds for personal expenses; and that the fraud "dr[e]w in a whole bunch of other people" listed as contractors on VanderMolen's falsified business documents. *Id.* at 19:20–20:24 (Page ID #285–86). In light of the flagrant misspending of funds from a government-administered relief program, the district court also stressed the need for specific deterrence and incapacitation. *Id.* at 21:9–17 (Page ID #287) ("There is no way a person could reasonably conclude that they had just obtained $170,000 from a federal

7

government program through a private bank to buy BMWs and fund a wedding reception . . . .").
Finally, the district court took VanderMolen's personal history into account, including his mental-health issues and repeated "financial mismanagement" exemplified by his numerous bankruptcies. *Id.* at 22:2–18 (Page ID #288). These explanations by the district court provide "sufficient evidence in the record to affirmatively demonstrate the court's consideration of" the § 3553(a) factors. *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006).

Interspersed with the district court's discussion of these factors is its consideration and reasoned rejection of VanderMolen's core argument: that his mental-health issues counseled in favor of a departure or variance. The district court displayed its familiarity with VanderMolen's psychiatric report and his diagnoses, stating that "the characteristics that are used to diagnose" narcissistic personality disorder "fit him to a tee." R. 44 (Sent'g Tr. at 19:2–9) (Page ID #285). But the district court did not believe that VanderMolen's mental-health diagnoses were necessarily linked to "the pattern of wrongdoing here." *Id.* at 21:21–22:1 (Page ID #287–88). And in any event, the district court found that VanderMolen's "wake of personal and financial carnage" stemming from the instant offenses and his history necessitated the prison sentence that the district court imposed. *Id.* at 22:2–18 (Page ID #288). Ultimately, the district court did credit VanderMolen's need for mental-health treatment while in prison. *Id.* at 22:19–23:12 (Page ID #288–89). That it did not grant VanderMolen's requested departure or variance, however, does not mean that it imposed a procedurally unreasonable sentence. *See, e.g.*, *United States v. Infante-Cabrera*, 538 F. App'x 706, 707–08 (6th Cir. 2013) (holding that district court imposed a procedurally reasonable sentence when it read materials concerning defendant's mental health, listened to argument concerning the same, and ultimately implicitly rejected defendant's appeal to

his poor mental health by stating "that [it] believed that [the] defendant's action in inflicting severe injury on a fellow inmate was a very serious matter"); *id.* at 708 ("Refusing to excuse defendant's conduct based on his mental illness does not make the sentence procedurally or substantively unreasonable."); *United States v. Johnson*, 680 F. App'x 451, 455–56 (6th Cir. 2017) (similar analysis, when "district court was . . . clearly aware of" defendant's mental-health issues); *United States v. Allen*, 665 F. App'x 531, 536 (6th Cir. 2016) ("The district court's sentence was procedurally reasonable because the record reflects that the district court's individualized assessment did not ignore [the defendant's] mental health.").

In sum, the district court afforded the parties adequate opportunities to argue their respective sentencing positions; clearly considered the § 3553(a) factors; and "set forth enough of a statement of reasons to satisfy [us] that he has considered the parties' arguments and has a *reasoned* basis for exercising his own legal decision making authority." *United States v. Petrus*, 588 F.3d 347, 352 (6th Cir. 2009) (quoting *Bolds*, 511 F.3d at 580) (alteration adopted). On this record, the sentence is procedurally reasonable.

## C. Substantive Reasonableness

VanderMolen's substantive-reasonableness challenge is functionally a repackaging of his procedural attack. It fails for the same reasons. To be clear, "the border between factors properly considered substantive and those properly considered procedural is blurry if not porous." *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007) (internal quotation marks and citation omitted). Nonetheless, review for procedural and substantive reasonableness are distinct inquiries even if there is some degree of overlap. *See id.* at 340 (reviewing for substantive reasonableness even though defendant's argument "appear[ed] identical" to procedural challenge). "A sentence may

be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Peppel*, 707 F.3d 627, 635 (6th Cir. 2013) (quoting *United States v. Robinson*, 669 F.3d 767, 774 (6th Cir. 2012) (internal quotation marks omitted)). When, as here, a district court renders a within-guidelines sentence, we may apply a rebuttable and non-binding presumption of substantive reasonableness. *See, e.g.*, *Adams*, 873 F.3d at 520.

VanderMolen argues only that his sentence is "arbitrary," making it substantively unreasonable. Appellant Br. at 12–13. But as discussed, the district court considered the § 3553(a) factors; explained that it viewed VanderMolen's conduct as serious and necessitating specific deterrence and incapacitation; and considered and rejected VanderMolen's argument that his mental-health issues mitigated his culpability. Even though we may have weighed these mitigating and aggravating facts differently, we cannot say on this record that the 30-month sentence is an arbitrary or unreasonable one. *See, e.g.*, *Liou*, 491 F.3d at 340.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.